[Docket No. 21]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JAMAR SAALIM,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DYCOM INDUSTRIES, INC.,<br>UTILIQUEST, LLC, STS, LLC,<br>MIKE BELL, STEVEN CONNOLLY,<br>JOHN DOES 1-10,<br><br>　　　　　Defendants. | Civil No. 07-2822 (RMB)<br><br>**OPINION** |

APPEARANCES:

Alan H. Schorr
Alan H. Schorr & Associates, PC
5 Split Rock Drive
Cherry Hill, NJ 08003
　　Attorney for Plaintiff

Kristine Grady Derewicz
Littler Mendelson, PC
One Gateway Center, Third Floor
Newark, NJ 07102
　　and
Michele Halgas Malloy
Littler Mendelson, PC
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, PA 19102
　　Attorneys for Defendants


**BUMB**, United States District Judge:

**INTRODUCTION**

　　This matter comes before the Court upon a motion for summary

1

judgment[1] filed by Defendant Dycom Industries, Inc. ("Dycom"). Plaintiff formerly worked for Defendant Utiliquest, LLC ("Utiliquest"), a subsidiary of Dycom.  Plaintiff filed a Complaint against Dycom, Utiliquest, STS, LLC ("STS"), Mike Bell and Steven Connelly (collectively, "Defendants"), asserting two claims under the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1 et seq. ("NJLAD").  Dycom now argues that it is entitled to summary judgment because it was not Plaintiff's employer.  For the reasons discussed below, this Court agrees.

**FACTUAL BACKGROUND**

Dycom is a leading provider of specialty contracting services with headquarters located in Palm Beach Gardens, Florida.  (Pl. SOF ¶ 1).  Utiliquest is a subsidiary of Dycom based in Atlanta, Georgia, with a facility in Hammonton, New Jersey.  (Id. ¶ 2).  Utiliquest provides underground facility-locating services to over 200 utility companies and divisions across the country.  (Id.).  STS is also an Atlanta-based subsidiary of Dycom providing technical services to the utility industry and has a facility in Philadelphia, Pennsylvania.  (Id.

---

[1] There is some confusion as to whether Dycom's motion is a renewed motion to dismiss or a motion for summary judgment. Because the motion relies on evidence outside of the pleadings (and made known to Plaintiff through a period of limited discovery), this Court will interpret the motion as one for summary judgment.

¶ 3). Defendant Mike Bell was the Vice President of Utiliquest, as well as the Vice President of STS, and resided in Baltimore, Maryland. (Compl. ¶ 4). Defendant Steven Connolly was the General Manager of Utiliquest in New Jersey and resided in New Jersey. (Compl. ¶ 5).

Plaintiff, an African-American, was employed as a technician (also known as a "locator") at the Utiliquest Hammonton facility, from April 2001 until his termination on December 21, 2005. (Pl. SOF ¶ 6). His job duties included locating and marking underground utility lines. (Id.). Plaintiff alleges that during his employment with Defendants, he was subjected to differential and adverse treatment based upon his race. (Id. at ¶¶ 7-12). He further alleges that he was terminated in retaliation for his complaints of race discrimination, even though Defendants claimed it was due to his involvement in a traffic accident. (Id. at ¶ 13). Plaintiff claims that other African-American employees of Defendants have also been terminated for being in traffic accidents, while similarly situated Caucasian employees would often only receive a suspension or no discipline at all. (Id.). Based on these allegations, Plaintiff brings two claims under the NJLAD: Count I alleges race discrimination and Count II alleges unlawful retaliation for Plaintiff's complaints of race discrimination.

3

**PROCEDURAL BACKGROUND**

Plaintiff filed his Complaint in New Jersey state court on May 4, 2007 and Defendants removed the matter to this Court on June 18, 2007. (Compl.; Notice of Removal [Dkt. No. 1]). On June 25, 2007, Dycom filed a motion to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Def. SOF ¶ 8). Plaintiff opposed this motion, arguing that discovery was necessary before resolution of the motion. (Id.). On September 18, 2007, this Court denied Dycom's motion without prejudice and granted a period of discovery limited to the issue of whether Dycom was Plaintiff's employer. (Id.). The Court also granted Dycom permission to file another motion at the conclusion of such discovery period. (Id. at ¶ 9).

The parties completed the limited discovery on May 2, 2008. Dycom submitted the present motion for summary judgment on May 16, 2008.

**FACTS REGARDING CORPORATE STRUCTURE**

Plaintiff asserts the following facts concerning the relationship between Dycom, as parent, and Utiliquest and STS, as subsidiaries:

**Dycom's oversight of its subsidiaries**

- The Presidents of Utiliquest and STS report to Dycom's Chief Operating Officer/Executive Vice President (Pl. SOF ¶ 14)

- Dycom officials meet quarterly with their insurance carrier

4

- to review claims against Dycom's subsidiaries (Id. ¶ 17)

- Dycom hires or takes part in hiring the presidents, vice presidents and other officers of its subsidiaries; Dycom engaged and paid an outside agency to help in finding the Utiliquest CFO and extended an offer of employment to Dennis Tarosky "on behalf of Dycom Industries, Inc." (Id. ¶¶ 23-27; 31-33)

- Dycom oversees subsidiaries' employee salaries/bonuses and changes in operational structure; subsidiaries provide Dycom with reports concerning payroll, operational activities, and employee disciplinary actions (Id. ¶¶ 40-44)

- Dycom requires its subsidiaries to adopt harassment and electronic communications policies and even provides form policies for its subsidiaries to use (Id. ¶¶ 34-37)

- Dycom requires all subsidiary employees to sign and abide by its Business Code of Conduct and Ethics; it also oversees enforcement of this policy (Id. ¶¶ 38-39)

- Dycom and its subsidiaries have the same insurance plans (Id. ¶ 16)

   **Dycom's Presentation of Itself**

- Dycom uses its name and reputation to attract candidates for employment with its subsidiaries (Id. ¶ 15)

- Dycom's website states that it has "10,000 employees in 450 locations" and provides services "throughout the United States" (Id. ¶¶ 18-19)

   **Other**

- Overlap of management: four individuals are corporate officers at Dycom, Utiliquest, and STS; they are all paid by Dycom (Id. ¶¶ 21-22)

- All stock offers granted as part of hiring packages are for Dycom stock, not subsidiary stock (Id. ¶¶ 27-28)

Dycom does not dispute the above facts, but offers certain qualifications/explanations as well as additional facts

5

concerning the relationship between Dycom and its subsidiaries:

- Utiliquest and Dycom operate separate businesses and maintain separate bank accounts, tax identification numbers and books (Def. SOF ¶ 13)

- Despite the overlap in management of Utiliquest and Dycom, at the time of Plaintiff's termination, Utiliquest also had its own president, CFO, and two vice presidents (Id. ¶¶ 27-28)

- Utiliquest pays its employees their salaries and calculates bonuses; Dycom then reviews the bonus calculations to ensure fairness (Id. ¶ 14)

- Utiliquest makes its own decisions regarding the hiring/firing of personnel and the structure/placement of employees, with the exception of the Utiliquest CFO (where Dycom participated in the recruitment of candidates) (Id. ¶¶ 16-20)

- On occasion, Dycom has hired the highest ranking executive of its subsidiaries (Id. ¶ 21)

- Although Dycom's subsidiaries use the same health insurance plans, they are not required to do so; rather, it makes financial sense to pool all employees together to negotiate health care costs (Id. ¶ 15)

- Although Dycom requires its subsidiaries to maintain certain employment policies, the subsidiaries decide what content to include in those policies; the policies are drafted by the subsidiary presidents, officers and human resource department, who may or may not choose to adopt Dycom's specific policies (Id. ¶¶ 22-26)

**STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986). A dispute is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. See id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. See id. "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)). "At the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**DISCUSSION**

Plaintiff seeks to hold Dycom responsible for the alleged racial discrimination and unlawful termination that occurred while he was working at Utiliquest under a "single employer" theory. In response, Dycom argues that Plaintiff has "failed to present the requisite extraordinary circumstances to hold Dycom accountable as a single employer." (Def. Motion at 2).

As recognized by the Third Circuit, "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 513 (3d Cir. 1996) (quoting

7

Johnson v. Flowers Indus., Inc., 814 F.2d 978 (4th Cir. 1987)); see also Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357, 363 (E.D. Pa. 1998) (noting the "strong presumption that a parent is not the employer of its subsidiary's employees"). Indeed, "courts have found parent corporations to be employers only in extraordinary circumstances." Marzano, 91 F.3d at 513 (quoting Johnson, 814 F.2d at 981); Martin, 17 F. Supp. 2d at 363 (same).

To determine whether a parent corporation is an "employer" in the context of employment discrimination, "the four-factor 'integrated enterprise' test is most appropriate." Martin, 17 F. Supp. 2d at 363 (concluding that the integrated enterprise test is essentially the same as the Third Circuit's veil-piercing analysis in Marzano); see also Johnson v. Cook Composites and Polymers, Inc., 2000 WL 249251 at *3-4 (D.N.J. March 3, 2000) (same). The four factors are: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership." Martin, 17 F. Supp. 2d at 362. The Court recognizes that "the four-pronged inquiry is not to be rigidly applied" and that employer status "ultimately depends on all the circumstances of the case." Martin, 17 F. Supp. 2d at 362-63.

**1. Functional Integration of Operations**

Dycom claims that Dycom and Utiliquest are functionally separate, as they "operate separate businesses from different

geographic locations, and maintain separate bank accounts, tax identification numbers and books." (Def. Motion at 8). Dycom also argues that although it reviews Utiliquest's financial decisions, under <u>Martin</u>, this is insufficient to demonstrate that the two corporations are a single employer. (<u>Id.</u>). Similarly, Dycom contends, as stated in <u>Martin</u>, the fact that Dycom and its subsidiaries are covered by the same health insurance plan does not render them a single employer. (<u>Id.</u>).

In response, Plaintiff argues that even though Dycom and Utiliquest are separate entities, they each "contribute[] something to an integrated package", as the court found in <u>McNeal v. Maritank Philadelphia, Inc.</u>, 1999 WL 80268 at *8 (E.D. Pa. 1999). (Pl. Opp. at 13). As evidence of the integrated nature of Dycom and its subsidiaries, Plaintiff points to Dycom's website, which claims that Dycom has 10,000 employees, provides services throughout the United States, and serves as a "one stop shop" for all telecommunication needs. (<u>Id.</u> at 13-14). Plaintiff also notes that the Presidents of Utiliquest and STS report to Dycom's COO/EVP and that Dycom officials meet quarterly to discuss the subsidiaries' liabilities. (<u>Id.</u> at 14). Furthermore, Plaintiff contends, the fact that Dycom and all of its subsidiaries are covered by the same health insurance plan also demonstrates the integrated nature of these companies.[2]

---

[2] Plaintiff argues that Defendant's reliance on <u>Martin</u> is inapposite because <u>Martin</u> involved a publicly traded investment

(Id. at 15).  Taken together, Plaintiff asserts, these facts provide enough evidence to allow a reasonable jury to find that there is an inter-relation of operations between these companies.

First, the Court finds the rationale in McNeal unpersuasive.  In McNeal, the plaintiff offered evidence that although the defendant companies were separate entities, they were actually part of a "bigger plan" to offer a variety of services all within the oil industry.  McNeal, 1999 WL 80268 at *8.  In particular, the plaintiff pointed to the parent company's annual report, which touted that its "service package is entirely unique in [the] industry."  Id.  The district court for the Eastern District of Pennsylvania found that, based on the evidence plaintiff presented, "a reasonable jury could conclude that [the subsidiary] was simply a division of [the parent] in their goal to provide this complete package in the oil industry."  McNeal, 1999 WL 80268 at *8.

This Court does not agree with the "integrated package" rationale in McNeal.  Such rationale, which could apply to any industry, would render the operations of a parent and its subsidiary "functionally integrated" just by virtue of the fact that the companies operate within the same industry.  This outcome stands in direct contradiction of the basic concept of

---

company which had acquired a 70% interest in the subsidiary, as opposed to the wholly owned subsidiary in this case.  (Id. at 15-16).

10

limited liability, which applies regardless of whether or not the parent and subsidiary offer goods/services within the same industry:

> It is a fundamental proposition of New Jersey corporate law that a corporation is a separate entity from its shareholders and that shareholders are insulated from the liabilities of the corporate enterprise. Even in the case of a parent corporation and its wholly-owned subsidiary, limited liability normally will not be abrogated.

Marzano, 91 F.3d at 513 (internal quotations and citations omitted); see also Martin, 17 F. Supp. 2d at 366-67 (noting "the general rule - that shareholders are insulated from the employment decisions of the corporation in which they hold stock"). Here, the fact that Dycom and its subsidiaries all offer services within the telecommunications industry does not demonstrate to this Court that their operations are integrated.

Rather than applying the "integrated package" analysis, this Court finds that an integration of operations is better demonstrated by factors such as "the commingling of funds and assets, the use of the same work force and business offices for both corporations, [] the severe undercapitalization of the subsidiary"[3] and the "fail[ure] to observe such basic corporate formalities as keeping separate books and holding separate shareholder and board meetings." Marzano, 91 F.3d at 513. In

---

[3] The Court notes that there is no allegation that Utiliquest is undercapitalized and, thus, unable to pay any potential liability in this case.

11

this case, Plaintiff has offered nothing to show that any of these factors are present. Moreover, the Court finds that the statements on Dycom's website merely describe and promote the business performed by Dycom and its subsidiaries; they offer no insight as to whether the actual operations of these companies are functionally integrated.

Second, the Court disagrees with the import Plaintiff places on Dycom's role in overseeing its subsidiaries. Merely because the Presidents of Utiliquest and STS report to Dycom's COO/EVP "is not enough to present a material factual dispute, because this exercise of control is not to a degree that exceeds the control normally exercised by a parent corporation." Frank, 3 F.3d at 1362. "To hold otherwise would mean that there would always be a material factual dispute as to this prong because the top officer of a subsidiary is, at some point, always held accountable to an officer of the parent corporation." Id. The fact that Dycom officials meet quarterly with their insurance carrier to discuss the subsidiaries' liabilities is similarly insignificant in terms of demonstrating a functional integration of operations.

Finally, this Court rejects Plaintiff's assertion that Martin is inapplicable in this case. In comparing the situation in Martin, where the parent was a majority shareholder of the subsidiary, with that in Marzano, where the parent wholly owned the subsidiary, the Martin court specifically stated that "[t]his

12

distinction is immaterial ... for a parent which wholly owns a corporate subsidiary is simply another kind of shareholder..." Martin, 17 F. Supp. 2d at 361, n.1.  Thus, this Court finds that the analysis in Martin is applicable to this case.

In Martin, the court explicitly rejected many of the same arguments Plaintiff makes here to demonstrate an integration of operations.  For example, the fact that the subsidiary was required to obtain the parent's approval before making large expenditures did not justify holding the parent liable for the subsidiary's conduct.  Id. at 367 (citing Fletcher v. Atex, 68 F.3d 1451, 1459-60 (2d Cir. 1995)).  The Martin court also held that "the fact that one of [the] parent's employees is an occasional consultant on [a] project' is not evidence of interrelated operations."  Id. at 368 (citing Frank, 3 F.3d at 1362-63).  Furthermore, even though the parent corporation handled the subsidiary's health insurance issues and administered a benefits plan for its subsidiary's employees, the court still found that this was insufficient to demonstrate integrated operations.  Id. at 363-67.  Lastly, although the parent paid its subsidiary's expenses directly, the court emphasized that the parent maintained distinct accounts and concluded that "the facts [did] not demonstrate the 'extraordinary circumstances' necessary to find that the parent corporation [wa]s the employer of its subsidiary's employees."  Id. at 367 (internal quotation omitted).

In sum, the Court finds that the evidence presented shows that Dycom was "involved with its wholly-owned subsidiary; such involvement does not abrogate the general rule of limited liability because parent corporations are allowed to participate in [their] subsidiaries' affairs." Kardis v. A.C. Nielsen Co., 1998 WL 119543 at *7 (D.N.J. Mar. 13, 1998). Plaintiff's evidence shows nothing more than an ordinary parent-subsidiary relationship and this is insufficient to demonstrate that Dycom and Utiliquest have a functional integration of operations. Thus, this factor weighs against holding Dycom accountable.

**2. Centralized Control of Labor Relations**

Although the Court recognizes that no one factor dominates in this four-part analysis, "some factors have more weight than others" and parental "control over employment carries significant weight." Martin, 17 F. Supp. 2d at 363 (citing Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 994 (6th Cir. 1997); Frank v. U.S. West, Inc., 3 F.3d 1357, 1363 (10th Cir. 1993); Rogers v. Sugar Tree Products, Inc., 7 F.3d 577, 582 (7th Cir. 1993)). In order to "satisfy the 'centralized control of labor' prong of the 'integrated enterprises' test, 'a parent must control the day to day employment decisions of the subsidiary.'" Martin, 17 F. Supp. 2d at 367 (quoting Frank, 3 F.3d at 1363).

Defendant contends that Dycom does not involve itself in the day to day personnel decisions of Utiliquest (i.e., the organizational structure of personnel, the hiring/firing

14

decisions), as demonstrated by the fact that Dycom played no role in either the hiring or firing of Plaintiff. (Def. Motion at 9). While Dycom did assist Utiliquest in locating and recruiting a Chief Financial Officer in 2006, Defendant claims that the ultimate hiring decision was made "in concert with the president and management team of [Utiliquest]." (Id.). Moreover, Defendant argues, Dycom's hiring of its subsidiaries' highest executives does not mean that Dycom controlled the day to day labor relations, as these types of decisions do not occur on a daily basis. (Id. at 10, n.8). Finally, as to the employment policies, Defendant asserts that even if Dycom required its subsidiaries to adopt Dycom's own employment policies word for word, this does not show that Dycom controls Utiliquest's labor relations. (Def. Reply at 5-6).

Plaintiff admits that "a Dycom official did not hire the Plaintiff" and that "shared corporate officers" do not control subsidiary employees' daily work assignments. (Pl. Opp. at 17-18). Nonetheless, Plaintiff contends that Dycom controls the labor relations of its subsidiaries as demonstrated by Dycom's involvement in the hiring and compensation of subsidiary employees as well as the institution of subsidiary employment policies. (Id. at 18-22). First, Plaintiff claims that Dycom hires or takes part in hiring the presidents, vice presidents and other officers of its subsidiaries. (Id. at 18). Plaintiff argues that Dycom engaged and paid an outside agency to help in

15

finding the Utiliquest CFO and extended an offer of employment to Dennis Tarosky "on behalf of Dycom Industries, Inc." (Id. at 18-19). Moreover, Plaintiff asserts that Dycom is "intimately involved in the compensation of employees" as Dycom oversees subsidiary employees' salaries and bonuses and offers employees Dycom stock as compensation. (Id. at 19-20). Plaintiff further claims that the subsidiaries provide Dycom with reports concerning payroll and operational activities. (Id. at 20). Finally, Plaintiff argues that Dycom exercises control over the working conditions of subsidiary employees by requiring them to adopt harassment and electronic communications policies. (Id. at 20). While the parties dispute whether Dycom requires its subsidiaries to use Dycom's own harassment and electronic communications policies, it is undisputed that Dycom requires all subsidiary employees to sign and abide by the Dycom Business Code of Conduct and Ethics.

Taking the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has still failed to demonstrate sufficient evidence that Dycom "control[s] the day to day employment decisions" of Utiliquest. Martin, 17 F. Supp. 2d at 367. The fact that Dycom hires the high-level executive officers of its subsidiaries says nothing about whether Dycom is involved in the day to day employment decisions of Utiliquest. Moreover, as discussed above, the fact Dycom ultimately approves subsidiary employees' salaries and bonuses to ensure fairness does not

manifest control of labor relations.  See Martin, 17 F. Supp. 2d at 367 (citing Fletcher v. Atex, 68 F.3d 1451, 1459-60 (2d Cir. 1995)).  Similarly, Dycom's requirement that its subsidiaries adopt harassment and electronic communications policies does not demonstrate the type of excessive control necessary to show control of labor relations.  Even if Plaintiff is correct that Dycom requires its subsidiaries to adopt Dycom's own harassment and electronic communications policies, this would not change the result because "[a] parent's broad general policy statement regarding employment matters are not enough to satisfy this prong."  Frank, 3 F.3d at 1363 (finding application of parent's equal opportunity policy, identity statement, and ERISA guidelines to subsidiaries insufficient evidence of labor control).

Thus, the evidence Plaintiff points to does not show that Dycom exercised "a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary entity."  Martin, 17 F. Supp. 2d at 367 (internal quotation omitted).  Accordingly, this factor militates against single employer status.

   **3.  Common Management**

It is undisputed that at the time of Plaintiff's termination, the following four individuals were corporate officers at Dycom, Utiliquest, and STS:

- Steven Nielsen - President & CEO of Dycom; Vice Manager of

> Utiliquest and STS

- Richard L. Dunn - Senior Vice President & CFO of Dycom; Treasurer of Utiliquest and STS

- Richard B. Vilsoet - Vice President, General Counsel & Secretary of Dycom; Secretary of Utiliquest and STS

- Gary S. Ruderman - Vice President of Corporate Taxation of Dycom and Assistant Treasurer of Utiliquest and STS

(Def. Motion, Ex. E; Pl. Opp., Ex. E). It is also undisputed that these shared officers were all paid by Dycom. Although Dycom points out that Utiliquest also had its own president, CFO, and two vice presidents, (Def. SOF ¶¶ 27-28), on balance, the undisputed overlap of management renders this factor in favor of a single employer finding.

The Court notes, however, that "the fact that two corporations share a manager is insufficient evidence of an integrated enterprise." Martin, 17 F. Supp. 2d at 368 (citing Frank, 3 F.3d at 1364).

### 4. Common Ownership

Similarly, common ownership is not at issue in this case. It is undisputed that Dycom wholly owns Utiliquest. Thus, this element also weighs in favor of a single employer finding. However, the Court recognizes that "[s]ole ownership alone is never enough to establish parent liability." Martin, 17 F. Supp. 2d at 363 (citing Frank, 3 F.3d at 1364).

18

**CONCLUSION**

After considering all of the elements in the four-factor integrated enterprise test in the light most favorable to plaintiff, this Court finds that Plaintiff has not established a genuine issue of material fact sufficient to overcome the "strong presumption" that Dycom was not his employer. Although the presence of common ownership and common management militates in favor of holding Dycom liable, these elements alone do not establish single employer status. See Martin, 17 F. Supp. 2d at 363, 368. Given the lack of functional integration of operations and centralized control of labor relations, elements which weigh more heavily in the analysis, this Court cannot find that Dycom and Utiliquest are a single employer. There is simply insufficient evidence to "justify taking the substantial step of piercing the corporate veil..." Ziegler v. Delaware County Daily Times, 128 F. Supp. 2d 790, 798-99 (E.D. Pa. 2001). Accordingly, Defendant Dycom is entitled to summary judgment. An appropriate Order will issue this date.

Dated: July 31, 2008            s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE